**NOT FOR PUBLICATION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

DANIEL J. DESMOND,                          :
                                            :          Civil Action No. 00-6261
                        Plaintiff,          :
                                            :
            v.                              :                **OPINION**
                                            :
HERSHEL GOBER, Secretary of                 :
Veterans Affairs,                           :
                                            :
                        Defendant.          :

Appearances:

      Daniel J. Desmond
      2 Roanoke Court
      Willingboro, New Jersey 08046
            Pro se

      Irene E. Dowdy, Esquire
      United States Attorney's Office
      402 East States Street
      Suite 430
      Trenton, New Jersey 08608
            Attorney for Defendant

**RODRIGUEZ, Senior District Judge.**

This matter comes before the Court on motion of Defendant Hershel Gober,

Acting Secretary of U.S. Department of Veterans Affairs, for partial summary judgment

[Docket No. 70] pursuant to Federal Rule of Civil Procedure 56.  For the reasons stated

below, Defendant's motion will be granted.

## BACKGROUND FACTS

Plaintiff, Daniel J. Desmond, began his employ with Defendant in August of 1990 as a Caretaker at Beverly National Cemetery ("BNC"), which is operated by the U.S. Department of Veterans Affairs ("VA").  In 1997, Defendant removed him from his position at BNC based on allegations that he was unable to perform his duties because he failed to maintain a valid drivers' license.  Following an appeal of the removal to the Merit Systems Protection Board ("MSPB"), the decision to remove the Plaintiff was reversed and Plaintiff was restored to active employment.

In 1999, Plaintiff submitted a claim for worker's compensation to the U.S. Department of Labor, Office of Worker's Compensation Programs ("DOL/OWCP"), as a result of sustaining a workplace injury on or about January 29, 1999.  The purported injury included anxiety and depression, stemming from the improper dismissal and alleged harassment at BNC.  The DOL/OWCP received a report regarding Plaintiff's condition from Dr. Leonard Katz, a counseling psychiatrist, which stated that Plaintiff was completely disabled from working at that time because he suffered from "anxiety and depression."  In August of 1999, Claims Examiner Alan Stein ("Stein") of the DOL/OWCP notified Plaintiff that his claim had been accepted, and he would begin to receive worker's compensation benefits dated retroactively to February of 1999.  Five months later, in January of 2000, Dr. Katz advised DOL/OWCP that Plaintiff was still suffering from anxiety and depression, extreme rage toward "everyone at the cemetery

and the VA," and that he was still unable to work and should be on total disability.

The DOL/OWCP retained Dr. Leon Rosenberg to provide a second opinion and examination of Plaintiff.  In January of 2000, Dr. Rosenberg reported that:

> [Plaintiff] feels that he cannot go back to work because of everyone in the VA system all the way up to Washington.  He, perhaps, is capable of performing his duties at another facility, but not one connected with the VA system. Perhaps he could be transferred to another part of government in a separate branch.  He, however, reported to me he would only be able to accept this if he went back with full benefits, vacation and without loss of the entitlements and if they made restitution for what had occurred.

Upon receipt of this evaluation, Stein requested more information to determine whether the DOL/OWCP could arrange for Plaintiff to participate in vocational rehabilitation.  In July of 2000, Dr. Rosenberg provided a second report, stating that Plaintiff's prognosis was "poor" and that he was permanently disabled from work within the cemetery system, and that perhaps vocational rehabilitation services could retrain him so that he could find a job in the private sector.  The evaluation also included that Plaintiff "would not be well to do if he did not (sic) certainly have safeguards of guaranteed salary, seniority and pension."  In a report dated September of 2000, Dr. Rosenberg noted that Plaintiff needed psychiatric treatment before he could begin rehabilitation.

In November of 2000, Dr. Joel Glass, a DOL/OWCP appointed psychiatrist, conducted an examination to address specific questions regarding the prospects for Plaintiff's rehabilitation.  Dr. Glass concluded that Plaintiff's symptoms were

3

permanently disabling.  Additionally, Dr. Glass stated that at the present time, Plaintiff was unable to perform any occupation.[1]

In April of 2000, Dolores Blake, the Director of BNC, asked the Human Resources at the VA Medical Center in Philadelphia to begin the procedure for removing Plaintiff from employment at BNC.  In May of 2000, the Human Resources office sent Plaintiff a letter, asking him to contact BNC to discuss his options: retirement, resignation or separation.  Plaintiff responded with two letters, stating that he was told by his doctors "not to have any contact with those involved with the BNC," and that he was not interested in retirement or resignation.  Next, the BNC sent Plaintiff a Letter of Proposed Involuntary Separation, citing Plaintiff's continued absence without any indication of an approximate return to work.[2]  To this, Plaintiff replied that the reasons for the separation were not stated with sufficient specificity, and that the BNC's hostile actions toward him were why he was not able to perform the requirements of his job.  However, in March of 2001, Defendant sent Plaintiff a letter of actual, as opposed to proposed, involuntary separation.

---

[1] The DOL/OWCP continued to receive reports on Plaintiff through January of 2003, affirming that he was still unable to return to the job market.

[2] Plaintiff alleges that two months before Blake began the separation process, he sent her a letter stating that he could return to work if transferred to a different cemetery; however, Defendant contends the letter was never received.  Plaintiff did not provide this letter, or even mention it, until his opposition to the Defendants' motion for partial summary judgment.  However, as the non-moving party, this Court will accept the validity of the letter.  Ultimately, for reasons later discussed, the letter has no influence on the outcome here.

## PROCEDURAL HISTORY

After a variety of incidents occurring at BNC in 1998 and 1999, which are set forth at length in this Court's Opinion of June 24, 2003, Plaintiff filed a Complaint (Docketed as Civil Action No. 00-6461).  By Opinion dated June 24, 2003, this Court granted Defendant's motion for partial summary judgment and dismissed all but one of Plaintiff's claims.  The only claim that remained was Plaintiff's claim of breach of privacy for disclosure of confidential medical information.

On July 9, 2004, Plaintiff filed a second Complaint (Docketed as Civil Action No. 04-3295), alleging several new claims arising from his involuntary separation and repeating one claim that the Court disposed of in its June 24, 2003 Opinion and Order. On July 15, 2005, the 2000 and 2004 actions were consolidated for all purposes.  The five claims in the consolidated action are: (1) that Plaintiff was improperly placed on AWOL status before his Worker's Compensation claim was accepted;[3] (2) a claim under the Rehabilitation Act, 29 U.S.C. § 791, for alleged disability discrimination; (3) a claim under Title VII of the Civil Rights Act of 1964 for alleged retaliation and reprisal; (4) an appeal from the MSPB's ruling that Plaintiff's 2001 dismissal was proper and supported by substantial evidence on the record; and (5) a claim for the violation of 42 U.S.C. § 12112 (d), alleging  a breach of confidentiality and improper disclosure of medical

---

[3] Summary judgment was granted on this claim pursuant to the Court's June 24, 2003 Order.

information[4].  On January 13, 2006, Defendant filed a second motion for partial summary judgment in the consolidated action.

Each claim will be addressed ad seriatim.

## STANDARD OF REVIEW

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

---

[4] This is the sole remaining claim from the first-filed Complaint.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 242.  Credibility determinations are the province of the factfinder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**<u>DISCUSSION</u>**

**1.      The AWOL Claim**

Although Plaintiff alleges in his second-filed Complaint that he has a cause of action based on Defendant's classification of his leave as AWOL, this Court granted summary judgment as to Defendant on that claim in its June 24, 2003 Opinion and Order. The Court reasoned that Plaintiff did not sustain an adverse employment action when he was temporarily placed on AWOL status. Therefore, in its second motion for partial summary judgment, Defendant contends that the law of the case doctrine should bar reconsideration of this issue.

"The law of the case doctrine limits the extent to which an issue will be reconsidered once the court has made a ruling on it." <u>Fagan v. City of Vineland</u>, 22 F.3d 1283, 1290 (3d Cir. 1994). However, courts maintain the authority to revisit prior decisions if extraordinary circumstances are presented which expose the prior decision as "clearly erroneous" or suggest that it would "work a manifest injustice." <u>Lambert v. Blackwell</u>, 387 F.3d 210, 237 (3d Cir. 2004) (citing <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 817 (1988). In other words, the law of the case doctrine does not limit a federal court's power, rather it directs its exercise of discretion. <u>Pub. Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.</u>, 123 F.3d 111, 116 (3d Cir. 1997).

Here, Plaintiff has not come forward with any evidence to suggest this Court's

decision was "clearly erroneous" or that it would work a "manifest injustice."  In his original complaint, Plaintiff asserted that he should have been on Leave Without Pay (LWOP), as opposed to AWOL, and that Defendant's misclassification of his status was discrimination against him.  Now, bringing the same claim, Plaintiff contends that being placed on AWOL was "offensive" and was one of the methods used by Defendant to "threaten" him.  Those allegations are not supported by fact, and could hardly be considered as new persuasive evidence.  Additionally, as the record indicates, Plaintiff's AWOL status resulted from his failure to comply with VA procedure.  Once Plaintiff finally complied with the procedure, he was placed on LWOP status retroactive to February 1, 1999, removing from his employment record all negative connotations of being on AWOL status.  Therefore, Plaintiff has failed to submit new evidence suggesting this Court's prior decision was either clearly erroneous or manifestly injust.  Accordingly, summary judgment on this claim will be granted.

## 2.     The Rehabilitation Act Claim

Plaintiff claims that his involuntary separation from employment violated the Rehabilitation Act, 29 U.S.C. § 791.  To make out a prima facie case of discrimination under the Act, a plaintiff must set forth the following: (1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job.  Gagliardo v.

9

Connaught Labs., Inc., 311 F.3d 565, 568 (3d Cir. 2002).

A disability is defined as: (1) a physical or mental impairment that substantially limits one or more of the major life activities; (2) a record of such impairment; or (3) being regarded as having such an impairment. 29 C.F.R. § 1630.2(g) (1998); see also Sloan v. City of Pittsburgh, 110 F. App'x 207, 212 (3d Cir. 2004) (citing Toyota Motor Mfg. v. Williams, 534 U.S. 184, 195 (2002) (holding that to have a disability, a plaintiff must prove a physical or mental impairment that limits a major life activity)).

A disabled individual is "otherwise qualified" if he or she, "with or without reasonable accommodation, can perform the essential functions of the employment that such individual holds or desires." Bd. of Trs. of the Univ. of Alabama v. Garrett, 531 U.S. 356, 361 (2001) (citing 42 U.S.C. § 12111(8)).  Additionally, "reasonable accommodations" include: (1) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (2) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities. 42 § 12111(9) (1991).  The Third Circuit has recently defined reasonable accommodations as "reasonable modifications to rules, policies or practices, the removal of architecture, communication or transportation barriers, or the provision of auxiliary aids and services."

10

Frederick L. v. Dep't of Pub. Welfare, 422 F.3d 151, 157 (3d Cir. 2005).

Further, the Circuit has recognized that the duty to provide reasonable accommodations is subject to certain limitations. Buskirk v. Apollo Metals, 307 F.3d 160, 168 (3d Cir 2002). An employer is not required to provide reasonable accommodation if it would impose an "undue hardship" upon the employer, or if it would conflict with seniority rules. Id. (citing U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 402-03 (2002) (holding that when a plaintiff cannot provide other evidence, for instance a showing that the employer frequently makes other unilateral changes in the seniority system, then an employer is entitled to summary judgment when the suggested reasonable accommodation would violate rules of a seniority system)); see also Kralik v. Durbin, 130 F.3d 76, 82-83 (3d Cir. 1997) (affirming a judgment where the accommodation requested by the employee would have adversely affected the seniority rights of her coworkers under a collective bargaining agreement, because it was not a reasonable accommodation that an employer should be expected to make).

Here, it is clear that Plaintiff has a disability. There is no disagreement that his emotional state is an "impairment," and that the "major life activity" limited is his inability to work and earn a living. See Van Houten v. Principi, 106 F. App'x 134, 137 (3d Cir. 2004) (holding that with respect to working, the term "substantially limits" means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training,

skills and abilities).  Moreover, numerous doctors and therapists have diagnosed him with

major depression and anxiety, and have stated that he is unable to work at present.

The issue then becomes whether Plaintiff is "otherwise qualified" to perform the

essential functions of the job, with or without "reasonable accommodations."  Clearly,

Plaintiff is not qualified without accommodations.  Therefore, the inquiry turns to

whether he is qualified to work after reasonable accommodations have been made for

him.  Although he failed to mention this in his Complaint, Plaintiff now provides a letter

that he claims was written in February of 2000, wherein he asked for reasonable

accommodations to be made for his return to work at another cemetery.[5]  In the letter, he

mentions "working at another cemetery," "coming back to work once my issues are

resolved," and "if you help me with changing cemeteries, then all my problems will be

over."  While the Court does not doubt Plaintiff's sincerity in returning to work in

February of 2000, the reality is that numerous doctors, between January 2000 and May

2002, provided the DOL/OWCP, and eventually the VA, with reports of his depression

and inability to work until properly treated.[6]  Several letters were sent back and forth

between Stein and Dr. Rosenberg, which made it clear that Plaintiff was depressed,

_____

[5] While the Defendants dispute the admission and legitimacy of this letter, for
purposes of this Court's review, we will view all facts in the light most favorable to
Plaintiff, and therefore, accept that the letter was written in February 2000.

[6] The prevailing theme in the medical evaluations was that Plaintiff needed intense
and proactive psychiatric treatment, and that his prognosis was poor because he had not
yet received that kind of therapy and neglected to take any prescribed medications due to
costs.

permanently disabled from working in the cemetery system, and only capable of entering the workforce again if "he had safeguards of guaranteed salary, seniority and pension."[7] Moreover, when the DOL/OWCP hired Dr. Glass for a more definitive evaluation of Plaintiff's chances of rehabilitation and beginning a new job in November of 2000 ,[8] he stated that Plaintiff suffered from depression, low energy, insomnia and other disabilities. In addition, he stated that Plaintiff was unable to perform his pre-injury job of cemetery caretaker, and, in fact, Plaintiff was so pre-occupied with depression and anger that he could not perform <u>any</u> occupation.

Reviewing the medical evaluations of Plaintiff's condition, there is no dispute that despite Plaintiff's letter to BNC declaring his intentions to work again if transferred to another cemetery, he was unable to undertake the duties of an occupation at that time. Additionally, as of May 2002, Plaintiff's therapist Edward Silver, of the Philadelphia Well Being Institute, declared that Plaintiff was unable to return to the job market. Therefore, even with reasonable accommodations, Plaintiff could not be considered "otherwise qualified" by the VA.

Finally, even if Plaintiff were otherwise qualified to work in another capacity, his

---

[7] These suggested safeguards were a result of Plaintiff's fears that he would be "set-up" for termination at any new job, whether in the public or private sector.

[8] The evaluation by Dr. Rosenberg on July 2000 was ambiguous. He stated that while Plaintiff was still disabled, there was a chance he could get back to work in some capacity if he a guarantee of certain benefits and securities. In the same report, Dr. Rosenberg stated that at that time, Plaintiff was permanently disabled from work within the cemetery system.

suggested "reasonable accommodations" interfered with the VA's seniority system.  In January of 2000, Dr. Rosenberg suggested that Plaintiff could perhaps be transferred to another part of the government in a separate branch, but "he would only be able to accept this if he went back to work with full benefits, vacation and without loss of other entitlements and if they made restitution for what had occurred."  Several months later, Rosenberg claimed that Plaintiff would not "be well to do if he did not (sic) have safeguards of guaranteed salary, seniority and pension."  Like the proposed accommodations in U.S. Airways and Kralik, Plaintiff's proposed accommodations are not "reasonable accommodations" because they effectively grant Plaintiff a seniority status to which he is not entitled.

Therefore, because Plaintiff was not "otherwise qualified" to return to work with reasonable accommodations, and the accommodations proposed were not reasonable, he has failed to make out the elements of a prima facie case under the Rehabilitation Act. Accordingly, summary judgment on this claim will be granted.

**3.    The Retaliation Claim**

Plaintiff filed five EEOC complaints against the VA in September of 1998. Subsequently, he was sent a "letter of proposed involuntary separation" in June of 2000. Plaintiff then claims the involuntary separation proposal was an act of "reprisal" or "retaliation" for his filing of the EEOC claims, and that he should be entitled to relief under Title VII of the Civil Rights Act of 1964 ("Title VII").

14

Title VII contains provisions making it safe for employees to file complaints against their employers, without having to fear punishment by said employers.  The general structure of proof for a claim of retaliation follows McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  A plaintiff has the burden of producing evidence that he or she (1) engaged in protected activity; (2) suffered an adverse decision by the employer; and (3) that there was a causal connection between the protected activity and the employer's decision.  Van Houten, 106 F. App'x at 137; see also Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000).  If the prima facie case is satisfied, the burden of production then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. McDonnell Douglas, 411 U.S. at 802.  "Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999) (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)).

Under the first element, Plaintiff is required to show that he engaged in a protected activity.  He filed five complaints with the Equal Employment Opportunity Commission ("EEOC") between September of 1998 and June of 1999.  Therefore, he satisfies the first element.

Under the second element, Plaintiff is required to show that he suffered an adverse

employment action.  An adverse employment action is one that results in "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  Although Defendant disputes whether notifying Plaintiff of the proposed involuntary separation in April of 2000 and officially separating him in March of 2001 was a disciplinary action, it concedes that the separation was an adverse employment action.  Therefore, Plaintiff satisfies the second element.

Under the third element, the one at issue in this case, Plaintiff is required to show that there was a causal connection, or nexus, between his prior EEOC complaints and the involuntary separation.  The Third Circuit focuses on two main factors when determining whether the causal link necessary for retaliation exists: timing and evidence of ongoing antagonism, Farrell, 206 F.3d at 281; however, these factors are not the exclusive ways to show causation because in retaliation cases, causation "is highly context-specific," Jensen v. Potter, 434 F.3d 444, 449 (3d Cir. 2006).

A period as short as eight months, absent other indicia, does not create an inference of retaliation.  In Clark County Sch. Dist. v. Breeden, the Supreme Court of the United States held that a twenty-month delay between an employee's protected conduct and an adverse action was insufficient to create an inference of, and indeed demonstrated a lack of, a causal connection.  532 U.S. 268 (2001).  Moreover, in Van Houten, the Third

16

Circuit held that an eight-month delay between the plaintiff's filing EEOC complaints and an adverse employment action was not an unusually suggestive time frame, and thus not persuasive evidence of a causal connection.  106 F. App'x at 137-38.

Here, the time differentials between Plaintiff's most recent EEOC complaint and the beginning of the removal process, the first letter of proposed separation, and the final notification of separation were ten months, twelve months, and twenty-one months, respectively.[9]  Thus, like in Clark County and Van Houten, the time period between Plaintiff's EEOC complaints and the involuntary separation does not support an inference of, and indeed suggest a lack of, a causal connection between the two.  Moreover, Plaintiff has not offered any evidence of ongoing antagonism or suggested any facts that could reasonably support the finding that there was a causal connection between his EEOC complaints and eventual separation.

Assuming Plaintiff had satisfied the prima facie case, he has not offered any evidence or factual support that the VA's actions were pretextual.[10]  After receiving the letter of proposed involuntary separation, Plaintiff responded to the VA that he was told not to communicate with anyone involved with the cemetery, and that he does not wish to

---

[9] Plaintiff's final EEOC complaint was filed in June 1999.  In April 2000, the Human Resources office of the VA was asked to "initiate the process" to remove Plaintiff from employment.  In June 2000, Plaintiff received a letter of Proposed Involuntary Separation, and in March 2001, the separation from employment became official.

[10] The VA submits that its decision to involuntarily separate Plaintiff from its employ was based on his continued absence without any indication of an approximate date upon which he would return to work.

retire, resign, or be involuntary separated; however, he offered no other alternatives, just an accusation that the reason why he cannot work was caused by the defendant.

Therefore, Plaintiff has failed to establish the third element (causation) of the prima facie case, and, in any event, has not rebutted Defendant's non-discriminatory reason for the adverse employment action.  Accordingly, summary judgment on this claim will be granted.

**4.    The MSPB Claim**

When Plaintiff was involuntarily separated from employment with the BNC, he appealed the removal to the MSPB.  Actions before the MSPB are either "pure" or "mixed."  A pure case results when an employee alleges harm from an improper non-discriminatory personnel decision, while a mixed case results when the employee alleges that the personnel decision resulted in part from prohibited discrimination.  Plaintiff's claims allege both improper personnel actions and discriminating conduct against him. Therefore, his case is "mixed."

Specifically, mixed cases involve alleged violations of Civil Service laws and discriminating conduct that is appealable to the EEOC.  5 U.S.C. §§ 7701-02; 29 C.F.R. § 1614.302.  Employees may choose to pursue these claims, including those involving adverse employment actions, by a direct appeal to the MSPB. 5 U.S.C. §§ 7511, 7512, 7513, 7701.  At any point after a final decision is made by the MSPB, "mixed case" complainants may have the decision reviewed by the district court.  5 U.S.C. §

18

7703(b)(2).[11]

The district court reviews the non-discrimination claims on the administrative record presented to the MSPB.  The court will affirm the MSPB determination, unless it is shown to be: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.  5 U.S.C. § 7703(c).

Conversely, the district court reviews any discrimination claims de novo.  Id.  As such, those claims are treated in the same manner as other Title VII claims, where a plaintiff can sustain his claim "by presenting direct evidence of discrimination and retaliation or by using indirect or circumstantial evidence that meets the McDonnell Douglas requirements."  Bailey v. Principi, Civ. Action No. 02-942, 2003 WL 22245100, at *4 (E.D.Pa. Aug. 20, 2003); see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1095-96 (3d Cir. 1995).  Additionally, plaintiffs must show by a preponderance of that evidence that a prima facie

---

[11]An unsuccessful party must appeal the MSPB's decision regarding cases of discrimination within 30 days after the date the individual filing the case received notice of the judicially reviewable action under such 5 U.S.C. § 7702.  5 U.S.C. § 7703 (1998).  Here, the decision was rendered by the MSPB in May of 2002 but Plaintiff did not file his second Complaint seeking review of the MSPB's decision until July of 2004; however, Plaintiff alleges that he should be excused from this requirement because he was in a coma when the period expired.  Because Defendant does not raise this issue and because of the Court's disposition of the review of the MSBP's decision, the Court will not address the merits of Plaintiff's timeliness.

case of unlawful discrimination exists.  Bailey, 2003 WL 22245100, at *2-3; see also

Hicks, 509 U.S. at 505; Marzano v. Computer Sci. Corp., 91 F.3d 497, 502-03 (3d Cir.

1996).

 Here, Plaintiff does not make specific arguments in his Complaint or opposition to

this motion.  Therefore, the determinations of which Plaintiff seeks review are not clear;

however, because a pro se Plaintiff is entitled to have his pleadings liberally interpreted,

the Court will review all four of the MSPB's determinations with regard to the removal

action.

 **a. Reason for Removal Action**

 In June of 2000, the VA issued Plaintiff a "Proposed Involuntary Separation"

letter, which cited Plaintiff's continued absence from work and continued unavailability

to return to work as reasons for the proposed removal.  The letter also noted that Plaintiff

had submitted in writing that he did not wish to explore his employment options with the

VA, such as retiring or resigning, even though these options are more beneficial to an

employee than involuntary separation.  Plaintiff responded to the letter with criticisms of

and allegations against the VA, although he did not dispute his absence from work or his

continued unavailability for work.

 In January of 2001, the VA issued Plaintiff an amendment of its original letter,

citing the sections of the MP-5 that further supported its reasons for removing him from

employment.  To this, Plaintiff responded that the reasons given were not specific and he

continued to make more accusations against the VA.  Finally, in March of 2001, Plaintiff received the actual notice of removal.

The MSPB concluded that the VA's decision to remove Plaintiff was properly supported.  The basis of its conclusion focused on the reasons given in the original letter of proposed separation, the specific sections of the MP-5 that supported its decision, and Plaintiff's failure to reply with regard to his return.  Specifically, the MSPB found that Plaintiff's absence from work for over two years at the time of the removal, the lack of indication for a return to work and the lack of medical evidence suggesting such a return. Second-filed Compl., Ex. C, pp. 7-8.

Since Plaintiff claimed his removal was a form of discrimination, this Court reviews the decision de novo.  Here, as already determined, Plaintiff failed to present a prima facie case for discrimination.  See section 3, supra.  Additionally, he has not presented any additional direct or indirect evidence, either to this Court or to the MSPB, that would dissuade the Court from that determination.  Therefore, the Court will affirm the MSPB's decision for the reasons the MSPB set forth in its decision.

**b.    Nexus Between the Adverse Action and the Efficiency of Service**

Removal for prolonged absence has long been considered just cause for removal. McKenzie v. U.S. Postal Serv., 1 M.S.P.B. 496, 497 (1980).  In McKenzie, the service terminated an employee who had been on LWOP status for more than two years due to illness or injury.  Id. at 496.  At the employee's initial hearing, the hearing officer upheld

his removal, finding that his absence was established by a preponderance of the evidence; that he was prevented from reporting for duty by reasons beyond his control; that his absence continued beyond a reasonable period; and that he was warned that an adverse action would be taken unless he become available for duty on a regular, full-time basis. Id. at 496-97.  The MSPB affirmed, reasoning that "[e]mployee absence for which no foreseeable end is in sight is a burden which no employer can efficiently endure."  Id. at 497.

Similarly, in Dornan v. Internal Revenue Serv., the service removed an employee after a prolonged absence following a work-related injury.  7 M.S.P.B. 499, 499 (1981). In upholding the removal, the MSPB noted that the employee had been out of work for approximately two years and "neither she nor her physician [knew] when she [would] be able to return to work."  Id. at 500.

Here, like in McKenzie and Dornan, Plaintiff had been absent from work for over two years at the time of his removal.  He had been notified by the service that if he were unable to advise of date he would return from leave, involuntary separation would be sought.  In response, neither he nor his medical team were able to give any indication that he was or at any time would be able to return to work.

Because this claim is of a violation of civil service laws, the Court must apply the deferential standards set forth in 5 U.S.C. § 7703(c).  Based on the above, the Court finds that the decision of the MSBP was neither arbitrary, capricious, an abuse of discretion or

other not in accordance with law; obtained without procedures required by law, rule, or

regulation having been followed; nor unsupported by substantial evidence.  Therefore, the

Court will affirm the MSPB's determination of this claim.

     **c.**     **Harmful Error**

Plaintiff has asserted that the VA made harmful error in processing the action

against him, and as such, the removal should be reversed.  Under 5 U.S.C. §

7701(c)(2)(A), an agency's decision may not be sustained if the appellant shows harmful

error in the application of the agency's procedures in arriving at the decision.  Reversal of

an adverse action is warranted only where a procedural error has had a harmful effect

upon the outcome of the case before the agency.  See Bowden v. Dep't of the Army, 59

M.S.P.B. 662, 667-68 (1993).

The harmful error alleged here is that the VA failed to state a specific reason for

the removing Plaintiff from employment.  Again, the MSPB cited the VA's previously

mentioned reasons as sufficient criteria for removing Plaintiff.  Plaintiff contends that the

agency removed him for being physically unable to work.  However, that contention is

inaccurate.  The reasons for the removal were Plaintiff's continued absence and the

potential for that absence to extend indefinitely.

Because this claim is of a violation of civil service laws, the Court must apply the

deferential standards set forth in 5 U.S.C. § 7703(c).  Because Plaintiff has not presented

any other evidence to contradict the VA's decision, the Court finds that the decision of

the MSBP was neither arbitrary, capricious, an abuse of discretion or other not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; nor unsupported by substantial evidence. Therefore, the Court will affirm the MSPB's determination of this claim.

### d.    The Reasonableness of the Removal Action Under the Circumstances

The final issue is whether the VA's choice to remove Plaintiff from employment was a "reasonable action." The MSPB could only modify the VA's chosen action if it found that the agency failed to weigh the relevant factors of that the agency's judgment clearly exceeded the limits of reasonableness. Toth v. U.S. Postal Serv., 76 M.S.P.B. 36, 39 (1997). In evaluating the action an agency has taken, the MSPB considers the nature and seriousness of the reason cited and its relations to the employee's duties, and whether any offense involved was intentional or frequently repeated. Rackers v. Dep't of Justice, 79 M.S.P.B. 262, 282 (1998).

Here, the MSPB focused on whether the VA had reason to believe Plaintiff could return to work in any capacity. As mentioned previously, Plaintiff had been absent from work without providing any medical evidence pertaining to his return, and had been receiving worker's compensation benefits for more than two years before he was officially removed. Even at the time of the MSPB hearing, there was no evidence of Plaintiff's return. Under those circumstances, the MSPB found that removing Plaintiff from employment was the only reasonable course of action.

Because this claim is of a violation of civil service laws, the Court must apply the deferential standards set forth in 5 U.S.C. § 7703(c).  Based on the above, the Court finds that the decision of the MSBP was neither arbitrary, capricious, an abuse of discretion or other not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; nor unsupported by substantial evidence.  Therefore, the Court will affirm the MSPB's determination of this claim.

**5.      The Breach of Confidentiality and Improper Disclosure of Medical Information claim pursuant to 42 U.S.C. § 12112(d)**

This claim was raised in Plaintiff's first-filed Complaint.  At the time that Defendant filed its first motion for partial summary judgment, it conceded that summary judgment on this claim was inappropriate.  Additionally, Defendant has not motioned for summary judgment on this claim in the motion presently before the Court.  Accordingly, this is the only claim that survives Defendant's motion for partial summary judgment.

<u>**CONCLUSION**</u>

Based on the foregoing, Defendant's Motion for Partial Summary Judgment will be granted and Plaintiff's Complaints will be dismissed, with the sole surviving claim being under 42 U.S.C. § 12112(d).

An appropriate Order will issue this date.

/s/ JOSEPH H. RODRIGUEZ
JOSEPH H. RODRIGUEZ
United States District Judge

DATED:  July 27, 2006

25